UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONSTELLIUM AUTOMOTIVE USA, LLC,

    Plaintiff,

v.

AMI LIVONIA, LLC,

    Defendant.

Case No. 2:19-cv-10462-LJM-MKM
Honorable Laurie J. Michelson

# OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

This case comes to the Court as an emergency so the Court writes primarily for the parties.

Since at least 2018, AMI Livonia, LLC has been supplying Constellium Automotive USA, LLC with certain car parts (e.g., "LH Mounting Plate"). AMIL is Constellium's only supplier of these parts. To make the parts, AMIL uses tooling it created. But it appears that AMIL only created the tooling to make parts for Constellium, that the tooling is only capable of making Constellium parts, and that Constellium paid AMIL the expense of making the tooling.

According to Constellium (and AMIL has to some extent conceded the point), AMIL has been having some financial difficulties. These difficulties (whether AMIL's fault or Constellium's) have made it difficult for AMIL to pay for the materials it needs to make the parts for Constellium. For this and related reasons, Constellium does not want AMIL to supply it parts anymore. Constellium has found a new supplier. And in a letter dated February 14, 2019, Constellium told AMIL that it was terminating all of its purchase orders "immediately." (ECF No. 2, PageID.274.)

That day, February 14, Constellium also sent trucks to AMIL's warehouse. Constellium wanted the tooling so it could have its new supplier make the parts for it. AMIL refused.

As a result, Constellium filed this lawsuit and asks this Court to order AMIL to "immediately deliver" the tooling. Unfortunately, the two businesses were not able to reach some type of wind-down resolution. So the Court must rule.

In deciding whether Constellium is entitled to preliminary relief, the Court considers whether Constellium is "likely to succeed on the merits," whether it is "likely to suffer irreparable harm in the absence of preliminary relief," whether "the balance of equities tips in [its] favor," and whether an injunction would be "in the public interest." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Cooper v. Honeywell Int'l, Inc.*, 884 F.3d 612, 615–16 (6th Cir. 2018).

Three of the factors can be addressed without extended discussion. Constellium has asserted that if it is not able to get the tooling from AMIL immediately, it cannot supply parts. (ECF No. 2, PageID.194.) This would "shut down the entire supply chain." (ECF No. 2, PageID.194.) And if that happened on account of Constellium, Constellium's reputation would likely take a hit. And Constellium has alleged that it will suffer "incalculable losses from being shut out of future supply work." (ECF No. 2, PageID.197.) So, without the tooling, Constellium is likely to suffer irreparable harm. On the other hand, AMIL (as opposed to AMI Manchester) was created for the very purpose of producing the parts at issue to Constellium. Indeed, according to AMIL (or, more precisely, AMIL's counsel), if Constellium is awarded the tooling, AMIL "would immediately lose 47% of its annual revenues." (ECF No. 4, PageID.246.) Thus, "removing the tooling would deal a death blow to Defendant's business operations." (ECF No. 4, PageID.246.) In short, Constellium is likely to suffer irreparable harm if the tooling remains in AMIL's

possession any longer, but the balance of harms does not tip strongly in favor of Constellium in view of the harm to AMIL if an injunction issues. As for the public interest, the public has an interest in seeing that automotive supply chains keep moving, that suppliers stay in business, and that tooling is in the possession of the proper party. So the public interest factor does not cut strongly in either direction and largely depends on Constellium's likelihood of success on the merits.

So the Court turns to the heart of the matter. Although Constellium has three legal theories (conversion, claim and delivery, and breach of contract), for purposes of deciding its motion for preliminary relief, it says that the Court need only address one: claim and delivery under Michigan Compiled Laws § 600.2920. This was Constellium's position at oral argument and in its reply brief. (ECF No. 6, PageID.291 & n.2.)

That strategic decision by Constellium avoids complicated issues on an immature record. Although Constellium's General Terms and Conditions ("Constellium's Terms") state, for example, "Constellium and its affiliates shall have the right to take immediate possession of Constellium's Property at any time without payment of any kind" (ECF No. 2, PageID.152 ¶ 24.d; *see also* ECF No. 2, PageID.152 ¶¶ 17.c, 20.e), AMIL argues that Constellium materially breached the parties' agreement first (ECF No. 4, PageID.252–253). And some law suggests that if that is true, then AMIL has the right to rescind the contract. *See Stahelin v. Sowle*, 49 N.W. 529, 532 (Mich. 1891). And if that law is correct, and the Court were to rescind the contract, then Constellium could not rely on its Terms, including the "take immediate possession" clause.

So the focus is on Michigan Compiled Laws § 600.2920. In relevant part, that statutory provision states, "A civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the

3

unlawful taking or unlawful detention, subject to the following conditions: . . . [a]n action may not be maintained under this section by a person who, at the time the action is commenced, does not have a right to possession of the goods or chattels taken or detained." Thus, the question is whether Constellium has the "right to [immediate] possession of the" tooling.

Constellium says it has that right because it owns the tooling. And it has support for that claim. For one, its Director of Supply Chain, says, "All of the Tooling used to manufacture the Products was obtained pursuant to purchase orders issued by Constellium (the 'Tooling Purchase Orders'). AMI furnished the Tooling according to Constellium's Tooling Purchase Orders. Once the Tooling was furnished, Constellium paid AMI for the Tooling. There are no outstanding payments or amounts due on the Tooling. Constellium has fully paid AMI for all Tooling at issue." (ECF No. 6, PageID.300.) To address this evidence, AMIL claims that Constellium merely paid AMIL to create the tooling, and so Constellium does not own (or, at least, has not shown it owns) the tooling itself. But the tooling is not general-purpose tooling where AMIL was expected to have kept it despite Constellium having paid for its creation. The tooling was apparently created solely for the purpose of AMIL supplying to Constellium and can only be used to create parts for Constellium and not other suppliers.

In any event, ownership is not really the issue. The issue is which party—Constellium or AMIL—has the right to *possess* the tooling at this moment. If A owns a truck but says that B can use it for a week, B has the right to possession for a week even if A owns it.

On the current record, the Court finds that Constellium has the right to immediate possession of the tooling. In addition to having paid for the tooling—or, at least, paid for its creation—there is other evidence indicating that Constellium's right of possession is presently superior to AMIL's. For one, the only reason AMIL created the tooling was to do work for

Constellium and the tooling can only make Constellium parts. And, as of now, Constellium no longer wishes to do business with AMIL. So AMIL has no need for the tooling. Yet Constellium has extreme need for the tooling.

In addition, while the Court does not enforce any provision of Constellium's Terms, the Terms are evidence of how Constellium and AMIL thought about their respective property interests in the tooling. And while Constellium's Terms indicate that AMIL had the right to possess the tooling, they also suggest that the parties understood that right to be limited. For instance, section 17 of Constellium's Terms states, "In connection with the expiration, cancellation or termination of the Purchase Order by either party, in whole or in part, for any or no cause (including, without limitation, Constellium's decision to change to an alternate source for manufacture of the Products whether or not to a Constellium-owned or -operated facility), Seller must cooperate in the transition of supply." (ECF No. 2, PageID.146 ¶ 17.a.) And paragraph c of section 17 states, "If and when requested by Constellium, Seller will return to Constellium all Constellium's Property in as good condition as when received by Seller (reasonable wear and tear excepted) and will comply with Seller's other obligations relating to Constellium's Property and Seller's Property in these Terms and Conditions and in relation to subcontracts." (ECF No. 2, PageID.147 ¶ 17.c.) As another example, section 20 of Constellium's Terms provides for "Termination." And paragraph e of section 20 states, "Upon termination of this Purchase Order, Seller and Constellium shall each, upon written request of the other, promptly deliver (or destroy under verification procedures acceptable to the affected party) all documents, materials, and other items obtained from or supplied by or on behalf of such party hereunder, together with any copies thereof." (ECF No. 2, PageID.149 ¶ 20.e.) And, finally, paragraph 24.a states, "All tooling (including fixtures, gauges, jigs, patterns, castings, cavity dies and molds, with all related

appurtenances, accessions, and accessories) . . . for which Seller is reimbursed by Constellium, shall remain Constellium's property." (ECF No. 2, PageID.151 ¶ 24.a.) As noted, Constellium's Director of Supply says, after AMIL "furnished" the Tooling, "Constellium paid AMI for the Tooling." (ECF No. 6, PageID.300.) That sounds like "reimburse[ment]." And then paragraph 24.d states, "Only Constellium (or Constellium's affiliates) has any right, title or interest in Constellium's Property, *except for Seller's limited right, subject to Constellium's unfettered discretion, to use Constellium's Property in the manufacture of the Products. Constellium and its affiliates shall have the right to take immediate possession of Constellium's Property at any time without payment of any kind.* Seller agrees to cooperate with Constellium if Constellium elects to take possession of Constellium's Property." (ECF No. 2, PageID.152 ¶ 24.d (emphasis added).) Finally, section 27, to which AMIL points, indicates that AMIL would create the tooling, but would then bill Constellium, essentially at cost, for the tooling. So that provision does not show that AMIL's possessory interest is superior to Constellium's. Collectively then, Constellium's Terms indicate that the parties believed that AMIL had a right to possess the tooling in order to perform under the purchase orders, but that AMIL's right to do so was limited in a way that gave Constellium the right to the tooling in situations where Constellium has indicated that it no longer wants AMIL to act as its supplier.

In sum, on this record, Constellium has shown that its right to present possession of the tooling is superior to AMIL's. So Constellium has shown that it is likely to succeed on the merits.

That is not to say that the Court is certain Constellium will prevail in the end. AMIL argues that Constellium breached the parties' agreement in "10 different ways to Sunday." If that is so,

and AMIL makes such a claim, it may be entitled to relief of its own. But that is not before this Court now.[1]

Accordingly, the Court ORDERS as follows:

1. Constellium Automotive USA, LLC is entitled to immediate possession of the tooling listed at Exhibit 3 of its motion (ECF No. 2-4, PageID.160–161);

2. Constellium is to send trucks to AMI Livonia, LLC's facilities to pick up the tooling at a time selected by AMIL but not later than 5:00 p.m. on February 28, 2019;

3. Constellium is to post a bond of $2.2 million; this amount represents three months of AMIL's lost revenue due to an inability to supply parts to Constellium;[2] should AMIL ultimately show it is entitled to the tooling, AMIL will receive the bond amount;

4. To the extent that AMIL has delivered parts that Constellium has not paid for, Constellium is to pay for all of those parts by 5:00 p.m. on February 28, 2019. It shall docket an affidavit of compliance prior to taking delivery of the tooling.

SO ORDERED.

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE

Date: February 27, 2019

---

[1] The Court notes that on this record, AMIL has not adequately identified the contractual provisions that have allegedly been breached nor shown that Constellium's breaches were "substantial" or "material." *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 343 (Mich. 1964); *Holtzlander v. Brownell*, 453 N.W.2d 295, 298 (Mich. Ct. App. 1990). So it may well be the case that Constellium could enforce sections 17, 20, or 24 of Constellium's Terms.

[2] As mentioned, Constellium has a right to terminate the parties' relationship, for any reason, upon 90 days' notice. It would not matter whether any party breached or who breached first.

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys of record by electronic means on February 27, 2019.

s/William Barkholz
Case Manager to
Honorable Laurie J. Michelson
